Griffith, J.
The primary issue raised by appellant concerns the legality of the search of his premises. He urges that the search was illegal on the ground that the search warrant was invalid. It is urged that the search warrant was invalid because it was issued on an insufficient affidavit, the affidavit failing to contain the facts upon which the affiant based his belief that the subject matter of the search was concealed on the premises.
The issuance of search warrants is controlled by Section 2933.21, Revised Code. Section 2933.23, Revised Code, provides:
“A warrant for search shall not be issued until there is filed with the judge or magistrate an affidavit particularly describing the house or place to be searched, the person to be seized, the things to be searched for and seized, and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed, and he shall state the facts upon which such belief is based. The judge or magistrate may demand other and further evidence before issuing such warrant.”
This section was considered by this court with the precise question raised by appellant in Nicholas v. City of Cleveland, 125 Ohio St., 474. The court, in the fourth paragraph of the syllabus of that case, states:
“Where an affidavit for search alleges only that complainant believes and has good cause to believe that the things to be searched for are concealed in a house or place, but does not state the facts upon which such belief is based, such affidavit and warrant issued thereunder are illegal and void under the provisions of Section 13430-3, General Code [Section 2933.23, Revised Code].”
At page 482, Judge Jones in his opinion stated:
“* * * The present law, Section 13430-3, General Code, *188 requires the complainant not only to state in his affidavit that he believes, or has good cause to believe, that the things are concealed, but it also requires that ‘he shall state the facts upon which such belief is based.’ There were no facts stated in the affidavit for search in the instant case. The affidavit left the determination whether there was probable cause for search in the judgment of the complainant. The complainant may not have had any fact or justifiable information to sustain his belief, or he may have obtained his information from an anonymous source which no reasonable man would take cognizance of; or the complainant may have been actuated by malice, or by some ulterior motive against the accused. * * *” See, also, Nathan-son v. United States, 290 U. S., 41.
An examination of the affidavit for the search warrant in the instant case shows it is subject to the same disabilities as the warrant in the Nicholas case. The affidavit states:
“Eugene Gamble, being first duly sworn according to law deposes and says that he has personal knowledge, or knowledge from a reliable source that narcotic drugs are kept in the said county of Summit and state of Ohio, on the premises and all appurtenances thereto and in the building or buildings thereon located, to-wit: 1161 Marcy St. City of Akron, and that the unlawful possessors of the said narcotics are John Doe and Mary Doe, real names unknown, and that the said narcotics are being kept and used in violation of Section 3719.02 et seq. of the Revised Code of Ohio.”
Here, the officer stated merely that he had personal knowledge or knowledge from a reliable source that narcotics were on the premises. He did not, as the statute requires, state any fact upon which the alleged knowledge was based.
In other words, an affidavit on which a search warrant is issued must contain a statement of the facts upon which the affiant bases his belief that the property for which the search is to be made is located at the premises designated in the affidavit.
In testing the sufficiency of probable cause for an officer’s action in searching the private premises of one wider suspicion and the requirements of an affidavit for a search warrant, paragraph two of the syllabus in the case of Jones v. United States (1960), 362 U. S., 257, is quite in point. It reads:
*189 “Issuance of the search warrant here involved was based solely on an affidavit by a federal narcotics officer reciting that: (1) he had received information from an unnamed informer that petitioner and another person were involved in illicit narcotics traffic and kept a supply of heroin on hand in the apartment and that the informer had purchased narcotics from them in the apartment; (2) information previously received from this informer had been correct; (3) the same information had been received from other sources; (4) petitioner and his associate were known to be drug addicts; and (5) the affiant believed that illicit drugs were being secreted in the apartment by petitioner and another person. Held: This was sufficient evidence of probable cause to justify issuance of the search warrant. ’ ’
This court recently held in the case of State v. Beck, 175 Ohio St., 73, that it is not reversible error on the part of a trial court to refuse to order the disclosure of the identity of an informer whose information led in part to the apprehension of an accused person, where such disclosure would not be helpful and beneficial to the accused in making a defense to a criminal charge lodged against him.
The search warrant in the present case was therefore invalid and void, and the court erred in refusing to suppress the evidence. The appellant’s conviction was based solely on the illegally obtained evidence and thus, under the doctrine of Mapp v. Ohio, 367 U. S., 643, is void.
The state urges that, inasmuch as the appellant, when he was confronted with the gun, admitted in the presence of the officers that it was his, he committed an offense in their presence and his arrest and conviction were legal. This argument is without foundation. The officers were on the premises by virtue of an invalid warrant. The fact that the warrant was invalid vitiates any subsequent acts which arose as a result thereof. Even as an illegal search may not be made legal by the evidence found thereby, neither can it be said that where the officers are illegally on the premises as a result of an invalid warrant they can justify their illegal presence by a subsequent occurrence.
Such a holding would be equivalent to giving the authorities a free license to enter one’s property without legal justifi *190 cation and then have such entry legalized by subsequent events. Such is not so in our present democracy. The courts must protect the fundamental rights of its citizens even though in doing so the guilty may at times escape punishment. This is the penalty which a free society must pay to protect its freedom. As the court in Application of Fowler (Okla. Or. App.), 356 P. (2d), 770, 776, said:
<{*#*!£ 0fgeers 0f the law can violate the law according to their own good pleasure for 12 days or until a confession has been extracted, as was done herein, what is to prevent them from abrogating the operation of habeas corpus indefinitely, particularly in the case of one bereft of friends and without family connections? We must take the long view of such situations. They must be viewed not just as an isolated individual matter, but the effects must be viewed as a link in a long chain of legalistic reaction. We must protect the individual’s fundamental rights whether he be a fallen officer or a habitual felon. We cannot ignore the rights of some of the people without doing violence to the rights of all. The foregoing constitutional and statutory provisions are not just idle gestures in the law, but are positive elements enacted to prevent just such violations of due process as are herein involved. They are safeguards designed to assure an accused due process of law. They are in fact bulwarks against the establishment of a police state —to avoid fake arrests, false imprisonments, abrogation of the writ of habeas corpus, and the use of sweat-box methods to obtain confessions. * * *”
We cannot hold that the end justifies the means in such situations and maintain our liberty.
Other errors assigned by appellant relate to the validity of the ordinance under which he was convicted. Inasmuch as we must hold appellant’s conviction invalid on the ground that it was based on illegally obtained evidence, it is unnecessary for us to consider this question.
The judgment of the Court of Appeals is reversed and final judgment rendered for appellant.

Judgment reversed.

Taft, C. J., Zimmerman, Matthias, O’Neill, Herbert and Gibson, JJ., concur.