**STATE of Missouri, Respondent,**

v.

**Richard L. WALLACE, Appellant.**

**KCD 30448.**

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Motion for Rehearing and/or Transfer Denied Dec. 31, 1979.

Application to Transfer Denied March 11, 1980.

Bruce W. Simon, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

CLARK, Judge.

Defendant appeals the judgment and sentence entered after his conviction on three counts charging possession of controlled substances.

Incriminating material on which defendant's conviction ultimately rested was acquired in a search of his residence under a magistrate's warrant. The initial point raised on this appeal and the dispositive issue in the case is the sufficiency of the affidavit upon which the warrant issued. Defendant contends that the constitutional requirement of probable cause to justify the warrant and subsequent search was not shown. U.S.Const.Amend. IV; Mo.Const. Art. I, § 15. Reversed.

The affidavit in question was authored by a police officer[1] and recited that a confidential informant had reported defendant's recent transfer of his residence to 4627 Cypress in Kansas City where he was dealing in Ritalin.[2] Defendant was known by the police to bear a reputation as a dealer in narcotics. The affidavit further reported the results of police surveillance of the residence on March 11, 1978 when associates of known drug dealers were seen to enter the house and unusual automobile traffic was observed. During the day, six different automobiles came to the house, some more than once, but with different occupants on succeeding visits. Visitors to the residence would enter, stay for a brief period and then leave.

Finally, the affidavit related that another informant on the following day, March 12, 1978, contacted a drug dealer by telephone under prearrangement which permitted police to monitor the conversation. The drug dealer, who was not identified and who was an inadvertent informant, stated that defendant was currently selling Ritalin "at $6.00 apiece."

A warrant was issued based on the above facts related in the affidavit and the further representation that the informants, other than the unidentified drug dealer, were reliable because prior information given had proven accurate. In the ensuing search of defendant's residence pursuant to the warrant, various controlled substances including Ritalin were found. Defendant's ultimate conviction for possession was substantially based on the evidence acquired under the authority of the warrant.

At trial, defendant moved to suppress the evidence seized, contending that the warrant was not supported by reliable and

1. Inexplicably, the affidavit was not included in the transcript on this appeal. Comment by the trial court in ruling on defendant's motion to suppress evidence indicates that a copy was made available to and was considered by the trial court. Whether the affidavit was so available because a part of the court file or because it was an exhibit not indicated to have been received is not disclosed. As no issue is made regarding the actual content of the affidavit, we assume it to have been correctly reproduced as to text in the motion to suppress and in appellant's brief.

2. A street or common trade name for methyphenidate, a Schedule II controlled substance.

credible information demonstrating probable cause to believe that a search of defendant's premises would yield evidence of criminal activity. The same argument is advanced on this appeal.

■ At the outset it is appropriate to acknowledge that execution of the warrant in this case did result in the discovery and seizure of various controlled substances quite apparently in defendant's possession despite later controversy concerning ownership and tenancy in the dwelling. To this extent, of course, the earlier information described in the affidavit proved to bear some degree of reliability. The validity of the search warrant, however, is measured by the circumstances existing at the time it was issued. The character of the warrant is not changed by what its execution discloses. *In re Search Warrant of Property*, 369 S.W.2d 155, 158 (Mo.1963).

The facts related in the subject affidavit were derived from three sources—direct observation by police surveillance, reports by reliable informants and the statement from the anonymous drug dealer. In sum, the information so conveyed and assembled taken at face value, including defendant's current associates and past reputation, the unusual traffic at defendant's residence and the availability for purchase from defendant of illicit merchandise, amply supported an expectation that a search of defendant's premises would yield fruits of criminal activity. The issue, however, is whether the sources of these facts bear those indicia of reliability and credibility which impart substance to the conditions and events related.

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the court announced certain fundamental requirements to be observed where probable cause for issuance of a search warrant depended on information from an informant. To assure a neutral and detached evaluation by the magistrate on the issue of probable cause, *Aguilar* requires that the supporting affidavit include sufficient detail to support a conclusion that the informant is speaking truthfully and that evidence of criminal activity will probably be disclosed by the

search. Under these standards, the identity of the informant need not be disclosed and the affidavit may be based on hearsay information.

A further explication of the *Aguilar* concepts was given in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which cautioned that hearsay informant sources may pass muster to establish probable cause only where the examining magistrate is informed of the underlying circumstances from which the informant concluded that a crime had been or was to be committed by the person named and the circumstances from which the police concluded that the informant was credible or his information was reliable.

Subsequent decisions, particularly *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), have cast doubt on the necessity for the magistrate to assess the probable credibility of an unidentified informant where the affidavit contains a substantial basis for crediting the hearsay. Thus, in *State v. Wiley*, 522 S.W.2d 281, 288 (Mo.banc 1975), our Supreme Court held that the prior reliability of an informant is not crucial so long as the information is corroborated through other sources thereby reducing the chances of a "reckless or prevaricating tale." Inquiry focuses on whether the informant's present information is truthful or reliable. *United States v. Harris, supra.*

First to be addressed in this case are the direct assertions of the affidavit identifying defendant as one currently engaged in the unlawful sales of drugs. Going as they do to the criminal conduct sought to be exposed and prosecuted, these allegations constitute the vital substance of the affidavit giving color to other facts susceptible of innocent explanation. As will be subsequently delineated, the reliability of statements identifying defendant as a dealer in drugs is essential to documentation of probable cause by this affidavit.

Despite the essential character of these factual ingredients, the affidavit in no manner sets forth the basis of knowledge by the informants as to defendant's alleged activi-

ty selling Ritalin. For all that appears, the knowledge may have been acquired by personal observation or participation by the informants or from a casual rumor overheard from drug users. The affidavit is quite simply devoid of any recitation of underlying circumstances required by *Aguilar* and *Spinelli* to test the reliability of the conclusion that defendant was dealing in controlled substances.

This case significantly parallels the facts of *Spinelli* in which the informant stated that *Spinelli* was operating a handbook and was accepting wagers by telephone. Here, as there, nothing appears in the affidavit which permits the suspicion engendered by the informants' tips to ripen into a judgment that defendant was probably engaged in criminal acts. This necessarily follows because the absence of detail leaves available the prospect that the informants speak not from personal knowledge but on the basis of mere suspicion, third-hand hearsay or even as a total fabrication out of animus toward the defendant.

 Despite the failure of the affidavit to satisfy the test of reliability by recitation of underlying circumstances supporting the informants' conclusionary statements, probable cause may yet be found if corroboration through police investigation, the results of which are stated in the affidavit, demonstrate that the informants' statements are probably accurate. While the knowledge of a law enforcement officer that the suspect bears a reputation of engaging in criminal activity may be taken into account in assessing the reliability of an informant's tip, *United States v. Harris, supra*, 403 U.S. at 582, 91 S.Ct. 2075, reputation standing alone is insufficient to accord reliability to an otherwise unsupported hearsay statement. *United States v. Harris, supra*, citing *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

 Incriminating facts revealed by observations following receipt of the informant's report will supply reliability only if the activity considered apart from the tip which engendered suspicion is itself indicative of some criminal endeavor. Innocent conduct is not endowed with an aura of suspicion by reason of an unsubstantiated informer's tip. *Spinelli v. United States, supra.*

Apart from the informant reports and the monitored conversation with the drug dealer, the affidavit information in this case included (1) defendant's location of his residence at a new address, (2) defendant's reputation as a dealer in narcotics, (3) visits to defendant's residence by associates of persons active in illicit drug transactions and (4) the use by a number of different persons of different automobiles to visit defendant's home for brief intervals. Such facts were derived at first hand by police observation and knowledge and are reliable. The events observed to occur at defendant's home, however, contain no inherent suggestion of criminal conduct. The removal of defendant's place of abode to a new location, the frequency and number of his visitors and the length of their visits scarcely point with any likelihood to a criminal enterprise particularly as no visitor was himself identified as a drug user or dealer, only associates of those so known to the police. It is only when viewed in the light of the informants' reports of defendant's activity selling drugs that the otherwise innocent appearing occurrences acquire a sinister tone.

 It is exactly this accumulation of independently insufficient components which is condemned by *Spinelli* as failing to meet the test of probable cause. In summary, the statements of the informants, both the undisclosed and the unknown sources, cannot be held to be reliable because unsupported by a sufficient statement of underlying circumstances from which the magistrate could conclude that the information was gained in a dependable manner. Collateral facts obtained by direct observation did not, standing alone, necessarily point to criminal activity. The reputation of the defendant as a drug offender and the past performance of the informant in furnishing reliable information cannot advance the otherwise insufficient detail on the strength of these additions to the affi-

davit contents. The magistrate improvidently issued the warrant, the motion to suppress the evidence thereby acquired was properly lodged and it was error to overrule the motion.

Review of the trial transcript requires the conclusion that evidence which must be suppressed by reason of the invalid warrant was essential to proof of the charges against the defendant and that a conviction of defendant could not stand on such evidence as remains. Accordingly, the judgment and sentence must be reversed and the defendant ordered discharged.

Disposition of this case as indicated renders unnecessary consideration of additional points raised by defendant.

Judgment reversed and defendant discharged.

All concur.