[No. B069299. Second Dist., Div. Six. Dec. 16, 1992.]

DEBRA DENISE BAILEY, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Kenneth I. Clayman, Public Defender, and Todd W. Howeth, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, and Kevin G. De Noce, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**GILBERT, J.**—An anonymous informer and an unidentified citizen informer supply a police officer with information of heavy foot traffic at petitioner's residence. The anonymous informant concludes petitioner is selling drugs and is involved in prostitution.

We hold that this information, without investigation, is insufficient to establish probable cause for the issuance of a search warrant. We further hold that no reasonably trained police officer could have believed otherwise. We therefore grant a peremptory writ of mandate.

### FACTS

On May 22, 1992, Officer Bernard Chase of the Oxnard Police Department submitted an affidavit for a search warrant. Officer Chase attested that

sometime during the week of May 10, he had read a report by Officer Kenneth Klopman. Officer Klopman reported that on May 14, 1992, he had spoken to an anonymous citizen. The party told Klopman that petitioner, Debra Denise Bailey, was dealing rock cocaine and was also involved in prostitution at 816 South "G" Street, apartment 21. The citizen informed the officer that "he/she" had seen heavy foot traffic in and out of the apartment.

Officer Chase attested that he had "received a call from a citizen informant who told me that he/she has seen a lot of foot traffic to and from the front door of apartment number 21 at 816 South 'G' Street. During this week the citizen informant told me that the subjects go to the front door, knock, and wait for the door to be opened. The citizen informant told me that after the front door opens the subjects will step inside and only be inside for approximately two to three minutes. . . . The citizen informant told me that sometimes a person who has gone inside the apartment, number 21, will stay up to a half hour. The citizen informant told me that they have been told that prostitution is also occurring in the apartment. The citizen informant told me that during the last eight to ten days he/she has watched 35 to 40 people go to the front door of apartment number 21 and enter. The citizen informant told me that they believe narcotics are being sold at the apartment because of watching television shows and being told by friends that this is how narcotics are purchased. The citizen informant told me that the subject who was in apartment number 21 is known to them as a Deborah [sic] Bailey who is a black female."

Officer Chase declared that people entering apartment complexes who stay for only a few minutes are often purchasing narcotics, and men stay in apartments for 10 to 30 minutes when visiting prostitutes. He based these conclusions upon his training and expertise in narcotics and prostitution. He also relied on his experience in surveillance in prior narcotics cases and discussions he had had with prostitutes.

After consideration of Officer Chase's affidavit, the magistrate issued the search warrant. On May 22, 1992, the warrant was executed and police seized evidence from petitioner's apartment. She was placed under arrest on felony charges of violation of Health and Safety Code section 11350, subdivision (a).

On August 7, 1992, petitioner moved to suppress the evidence and quash the search warrant on the grounds that: (1) the affidavit in support of the search warrant did not support a finding of probable cause, and (2) no reasonably well-trained officer would have held a good faith belief that the affidavit supported the magistrate's finding of probable cause.

The motion was denied by respondent superior court. Petitioner sought review by way of a petition for an extraordinary writ. (Pen. Code, § 1538.5, subd. (i).) We have granted an alternative writ.

### DISCUSSION

■ Appellate review of a trial court determination on a motion to suppress evidence under Penal Code section 1538.5 is a two-step process. Express or implied findings of fact are upheld if supported by substantial evidence; we then use independent judgment to determine whether those facts establish probable cause. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) ■ Courts should not invalidate search or arrest warrants by imposing hypertechnical requirements rather than a commonsense approach to probable cause. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741].)

Probable cause to issue an arrest or search warrant must, however, be based on information contained in an affidavit providing a substantial basis from which the magistrate can reasonably conclude there is a fair probability that a person has committed a crime or a place contains contraband or evidence of a crime. (*Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317].)

*Gates* established a "totality of circumstances" test. Prior to *Gates*, the reliability of an informer depended upon the prosecution establishing his veracity and the basis of his knowledge. (See *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].) The *Gates* court expressly rejected the use of these categories as independent requirements stating that the two elements were merely "relevant considerations" in a totality of circumstances analysis. (See *Illinois* v. *Gates, supra*, 462 U.S. at p. 233 [76 L.Ed.2d at p. 545]; see also *Massachusetts* v. *Upton* (1984) 466 U.S. 727, 732 [80 L.Ed.2d 721, 727, 104 S.Ct. 2085].) By replacing the *Spinelli-Aguilar* two-pronged test, *Gates* put elasticity into probable cause and gave it broader contours. It did not, however, require us to start from scratch in enunciating rules of probable cause to issue arrest warrants.

*Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929 [216 Cal.Rptr. 817], involved similar facts, although unlike the instant case, there was no citizen informant. Police officers had received information from anonymous informants regarding criminal activity. The appellate court found that three anonymous tips corroborated by police observation of innocent activity did

not add up to probable cause. (*Id.*, at p. 939.) The court noted that the police investigation had not corroborated any facts in the tips to which any degree of suspicion attached nor any predictions of future activity. (*Id.*, at pp. 938-940.) Instead, the police corroboration merely confirmed that the suspect had the same residence and car mentioned in two of the three tips. (*Id.*, at p. 940.)

 The affidavit here, like the affidavit in *Higgason*, is flawed when judged by the standards in *Gates*. In *People* v. *Fein* (1971) 4 Cal.3d 747, 753 [94 Cal.Rptr. 607, 484 P.2d 583], our Supreme Court acknowledged that "there may be circumstances where corroborative information from separate, unrelated sources will thereby establish its credibility." This does not mean that police officers need only corroborate easily obtained facts. In *Gates*, for example, the officers obtained not only easily obtained facts, but specific details of conduct that related to criminal activity. (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 245-246 [76 L.Ed.2d at pp. 552-553].) The officers failed to do that here.

The affidavit mentions two telephone calls, one from an anonymous tipster, the other from a citizen informant, regarding Bailey's alleged criminal activities. The callers stated that they saw heavy foot traffic. The citizen informer noted that most of the people only stayed for a few minutes. Independent police investigation merely confirmed that Ms. Bailey lived at the address in question.

"Heavy foot traffic" does not necessarily engender criminal behavior. True, under certain circumstances, such activity might raise suspicions, or be one indicator of possible narcotics transactions. (See *People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 758 [195 Cal.Rptr. 311]; *People* v. *Terrones* (1989) 212 Cal.App.3d 139 [260 Cal.Rptr. 355].) But, unlike *Terrones*, here there was not a report from an informant who had actually purchased drugs from Ms. Bailey. Both informants saw "heavy foot traffic" and from this concluded that Ms. Bailey was dealing drugs and was engaged in prostitution.

"An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* [v. *United States* (1933) 290 U.S. 41 (78 L.Ed. 159, 54 S.Ct. 11)] failed to meet this requirement. An officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate. . . . Sufficient information must be presented to the magistrate to

allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 239 [76 L.Ed.2d at p. 549].)

There are no facts showing that either informant witnessed any criminal activity. That one of the informants was a citizen informant does not affect the nature of the information, only the credibility of the informant. The only activity witnessed by either informant was "heavy foot traffic." But, without corroboration or the consideration of some relevant factor, heavy foot traffic may just as likely reflect that the suspect is engaged in innocent activity, such as selling soap or cosmetics. In such instances, it is the policeman's lot, with perhaps some difficulty, to smother his feeling that a suspect is occupied in crime, and to do his duty of gathering further evidence before applying for a search warrant.

Independent police work here did not corroborate any suspicious activity or confirm future actions not easily predicted. As in *Higgason,* "[t]he totality of the circumstances presented by this affidavit do not show 'a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois* v. *Gates, supra,* 462 U.S. 213, 238 [76 L.Ed.2d, 527, 548].) '[T]he magistrate had [no] "substantial basis for . . . conclud[ing]" that probable cause existed. [Citation.]' [Citation.]" (*Higgason* v. *Superior Court, supra,* 170 Cal.App.3d at p. 941, fn. omitted.)

The absence of probable cause does not end our inquiry. We must now determine whether the searching officers conducting the search reasonably believed that the warrant was valid. (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].)

Would a reasonably well-trained officer have known the search here was illegal despite the magistrate's authorization? (*United States* v. *Leon, supra,* 468 U.S. at pp. 922-923, fn. 23 [82 L.Ed.2d at p. 698].) ▇▇▇ The standard of objective good faith derives from something more substantial than a hunch. It requires that officers "have a reasonable knowledge of what the law prohibits." (*Id.,* at p. 919, fn. 20 [82 L.Ed.2d at p. 696].) A reasonable officer will be found to know a search was illegal when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. (*Id.,* at p. 923 [82 L.Ed.2d at p. 699].)

Harried magistrates may not always take the care necessary to ensure that the application for the warrant contains sufficient allegations of probable cause. (*Malley* v. *Briggs* (1986) 475 U.S. 335, 345-346 [89 L.Ed.2d 271, 281-182, 106 S.Ct. 1092].) An officer may not shift all of the responsibility

for the protection of an accused's Fourth Amendment rights to the magistrate. (*People* v. *Camarella* (1991) 54 Cal.3d 592, 604 [286 Cal.Rptr. 780, 818 P.2d 63].) Therefore, an officer applying for the warrant is required to exercise reasonable professional judgment. (*Ibid.*)

 The affidavit here lacks sufficient indicia of probable cause so as to make reliance upon it unreasonable. As mentioned, there was a bare accusation by an anonymous caller who claimed to have witnessed heavy foot traffic to and from Bailey's apartment and who therefore had concluded that Bailey was selling rock cocaine. There was a call from a citizen informant who also had witnessed the heavy foot traffic and had concluded that Bailey was involved in drugs.

The officers could have conducted surveillance to confirm the suspected activities. Given the 10- to 12-day delay between the telephone calls by the tipsters and the date of the application for the warrant, it is apparent the investigation was not conducted because of some exigency.

The actions of the officers may have been well meant and they may have been acting in subjective good faith, but their conduct was not "objectively reasonable" under the *Leon* guidelines. (See *People* v. *Johnson* (1990) 220 Cal.App.3d 742, 750 [270 Cal.Rptr. 70]; *People* v. *Maestas* (1988) 204 Cal.App.3d 1208, 1221 [252 Cal.Rptr. 739].)

 A search warrant may not be upheld merely because the officer who signed the affidavit in support of the warrant or the officer who brings the warrant to the magistrate thinks it is sufficient. Such a rule would leave an important part of law enforcement to well-intentioned tyros or to those with the least competence.

Let a writ of mandate issue directing respondent superior court to set aside its order denying the motion to suppress evidence and to enter a new order granting said motion. The alternative writ is discharged.

Stone (S. J.), P. J., and Yegan, J., concurred.